IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | |
|---|---|
| In re: ) | |
| ) | Chapter 7 |
| **JTR1, LLC f/d/b/a JTR, LLC** ) | |
| ) | Case No. 20-30141 |
| Debtor. ) | |
| ) | |
| **A. Burton Shuford, Trustee of the Bankruptcy Estate of JTR1, LLC f/d/b/a JTR, LLC,** ) ) ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adv. Proc. No. 22-03018 |
| vs. ) | |
| ) | |
| **BJS Insurance, LLC** and **JJM, LLC,** ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN OPPOSITION TO JOINDER TO MOTIONS TO DISMISS**

NOW COMES Plaintiff A. Burton Shuford, Trustee of the Bankruptcy Estate of JTR1, LLC f/d/b/a JTR, LLC (the "Trustee" or "Plaintiff") and respectfully submits this Brief in Opposition to Joinder to Motions to Dismiss filed by Defendants BJS Insurance, LLC and JJM, LLC (collectively, the "Defendants") in this action.

**STANDARD**

1.   In ruling on a Rule 12(b)(6) motion, a Court should keep in mind that as a matter of general course it is a "disfavored" motion. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2) which

1

requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

2. Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, a complaint may survive a motion to dismiss even if it appears "that a recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984).

## ARGUMENT

3. This lawsuit seeks to avoid certain transfers made to Defendants in advance of the petition date. Certain of the avoidance claims arise from (i) 11 U.S.C. § 544(b) and (ii) 28 U.S.C. §§ 3301 et seq., commonly called the Federal Debt Collection Procedures Act (the "Federal Transfer Act").

 a. **Section 544(b)**

4. Section 544(b)(1) provides as follows:

> Except as provided in paragraph (2) [relating to charitable contributions], the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is *voidable under applicable law* by a *creditor holding an unsecured claim* that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11. U.S.C. § 544(b)(1) (emphasis added).

5. Defendants filed their Joinder to Motions to Dismiss [Doc. No. 8] on March 28, 2022 (the "Motion" or the "Joinder to Motions to Dismiss"). In their Motion, the Defendants have raised no factual arguments regarding the terms of Section 544. They have not contested that the Transfers (as defined in the Complaint) constitute the transfer of an interest of the debtor in property or that the Pension Benefit Guaranty Corporation (the "Agency") holds an allowed unsecured claim in this case.

6. Nor could a party reasonably challenge the Agency's position in this case. This court entered an "Order Approving Settlement Pursuant to Bankruptcy Rule 9019" in the JTR1 core bankruptcy case (No. 20-30141) [Doc. No. 34] (the "Order"), which provides that "[the Agency] shall have an allowed, general unsecured claim in the amount of $6,645,541.00 in each Chapter 7 case…" *Order* ¶ 10.

7. On its face, the Trustee has satisfied the initial requirements of Section 544(b).

b. **"Applicable Law" and the Federal Transfer Act**

8. The "applicable law" on which the Trustee relies in this case is the Federal Transfer Act.

9. The Federal Transfer Act is analogous to the uniform fraudulent transfer act; however, it is limited to claims held by the United States and provides a longer (six year) statute of limitations. *See*, *e.g.*, Collier P 548.09[c] (16th 2022); 28 U.S.C. §§ 3301 *et seq*.; 28 U.S.C. § 3306.

10. The Defendants seem to question whether the Agency may assert claims under the Federal Transfer Act and argue that the Trustee cannot stand in the shoes of the Agency in order to assert the claims in this case.

3

### i. **Rules of Statutory Interpretation**

11. The Court's first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The Court's inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290, 298 (1989); *see also Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 1149–1150, 117 L.Ed.2d 391 (1992).

12. "When the language of the statute is not open to interpretation, this court's task is simple: apply the plain language." *In re Usery*, No. 15-30017, slip op. at 5 (Bankr. W.D.N.C. Oct. 5, 2020). The Supreme Court of the United States has held that "'[t]he task of resolving [a] dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself.'" *In re Gaither*, 595 B.R. 201, 209 (Bankr. D.S.C. 2018) (*quoting United States v. Ron Pair Enters, Inc.*, 489 U.S. 235, 241 (1989)) (alterations in original). *See also In re Zagaroli*, No. AP 20-05000, 2020 WL 6495156, at *2 (Bankr. W.D.N.C. Nov. 3, 2020).

### ii. **"Applicable Law" should be broadly construed**

13. "'Applicable law,' as used in § 544(b)(1), should be construed to be a broad term, as the Code contains no language limiting its meaning, save that the 'triggering' creditor into whose shoes the trustee steps must be able to avoid a transfer under the selected law." *Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816, 825 (Bankr. D. Idaho 2017) (*citing Mukamal v. Kipnis (In re Kipnis)*, 555 B.R. 877, 882 (Bankr. S.D. Fla. 2016) and *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 711 (Bankr. N.D. Ill. 2014)).

14. The language of § 544(b)(1) also does not restrict which of a debtor's actual creditors a trustee may choose as a vehicle to avoid a transfer, except that such creditor must hold

4

an unsecured claim that is allowable under § 502, or not allowable only under § 502(e). *In re CVAH*, 570 B.R. 816, 825 (*citing* 11 U.S.C. § 544(b)(1) and *Gordon v. Harrison* (*In re Alpha Protective Servs.*), 531 B.R. 889, 906 (Bankr. M.D. Ga. 2015)). It is clear from other provisions of the Bankruptcy Code that Congress was fully capable of creating special provisions for governmental units and/or tax debts when it deemed appropriate. *See, e.g.*, 11 U.S.C. §§ 362(b), 505, and 507. The absence of a special "governmental unit" or similar provision in Section 544(b)(1) is meaningful.

15. "Attributing a broad reading to 'applicable law' is in line with the purpose of § 544(b)(1), and the expansive rights it provides to bankruptcy trustees. Giving it such a meaning is also consistent with the Supreme Court's interpretation of the very similar phrase 'applicable nonbankruptcy law' found elsewhere in the Code, in § 541(a)(2)." *In re CVAH,* 570 B.R. 816, 825-826*; see also Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519, 527 (1992), (explaining that Congress "knew how to restrict the scope of applicable law to 'state law' and did so with some frequency", referring to §§ 109(c)(2), 522(b)(1), 523(a)(5), and other sections of the Code).

16. To maximize creditor recovery, Congress gave trustees broad powers to avoid and recover fraudulent and preferential transfers. *See* 11 U.S.C. §§ 544, 547, and 548; *United States v. Sims* (*In re Feiler*), 218 F.3d 948, 954 (9th Cir. 2000) (noting that Congress conferred "broad avoidance powers on the trustee"); *see also Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 508 (D.S.C. 2000) (citing *A.M. Mancuso v. Continental Bank Nat'l* (*In re Topcor, Inc.*), 132 B.R. 119, 125 (Bankr. N.D. Tex. 1991) ("[T]he general policy of the [Bankruptcy Code is] to provide trustees broad avoidance powers to maximize the value of the estate for the benefit of all creditors.")).

17. "Allowing a trustee to utilize all available 'applicable law' furthers the trustee's ability to accomplish this purpose." *In re CVAH, Inc.*, 570 B.R. at 825.

### iii. **Likewise, the Federal Transfer Act should be broadly construed**

18. The Defendants would have the court limit the applicability of the Federal Transfer Act.

19. Based on the same standards stated above, the court should deny the Defendants' request.

20. The language of the Federal Transfer Act is clear and unambiguous.

> In an action or proceeding under this subchapter for relief against a transfer or obligation, the United States, subject to section 3307 and to applicable principles of equity and in accordance with the Federal Rules of Civil Procedure, may obtain--(1) avoidance of the transfer or obligation to the extent necessary to satisfy the debt to the United States; (2) a remedy under this chapter against the asset transferred or other property of the transferee; or (3) any other relief the circumstances may require.

28 U.S.C. § 3306(a)(1)-(3).

21. As is clear on its face, "[the Federal Transfer Act] was enacted to establish 'a comprehensive statutory framework for the collection of debts owed to the United States government.'" *In re CVAH,* 570 B.R. at 827 (citing *United States v. Gelb*, 783 F.Supp. 748, 751 (E.D.N.Y. 1991) (quoting H.R. Rep. No. 101–736, 101st Cong. 2d Sess., reprinted in 1990 U.S. Code Cong. & Admin. News 6630, 6631)).

22. There is no provision within the statutes that sets limitations on which branches or entities within the United States government may rely on the Federal Transfer Act remedies. *See* 28 U.S.C. § 3301 *et seq*.

23. Over time, defendants have launched a number of arguments against the application of the Federal Transfer Act in bankruptcy avoidance actions. See, e.g. *In re Gaither*, 595 B.R.

6

201, 206-214 (conducting a thorough analysis of cases, which ruled against a Trustee's ability to rely on the Federal Transfer Act, including *MC Asset Recovery, LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 536 (5th Cir. 2012) and *Wagner v. Ultima Holmes, Inc. (In re Vaughan Co.)*, 498 B.R. 297 (Bankr. D. N.M. 2013)).

24. Those have included arguments that (i) the Federal Transfer Act is limited to recover *only* a "debt to the United States";[1] (ii) a trustee may not step into the shoes of a government entity when his action "involve[d] no public rights or interest";[2] and (iii) if a government entity has an independent collection mechanism, then the Federal Transfer Act should not apply.[3] Under the majority approach, those arguments have been analyzed, and, as articulated in *In re Gaither*, rejected. *595 B.R. 201*.

25. Nevertheless, in reliance on the *Durango-Georgia Paper Co.* case, the Defendants have requested that the court rule against the Trustee's ability to assert causes of action under the Federal Transfer Act.

26. Before applying the *Durango-Georgia Paper Co.* case it is important to note a few key facts. First, the question posed in *Durango-Georgia Paper Co.* is whether a bankruptcy trustee may directly assert a claim under the *ERISA* statutes, specifically, 29 U.S.C. § 1362. *Durango-Georgia Paper Co.*, 739 F.3d 1263, 1268-69. The opinion contains *no* analysis of the application or meaning of either (i) § 544(b) of the Bankruptcy Code or (ii) the Federal Transfer Act. *See gen*. *Durango-Georgia Paper Co.*, 739 F.3d 1263. Indeed, neither of the statutes is referenced in the opinion. *Id.* Nor does the case consider any comparable avoidance statute. The statute at issue in

---

[1] *In re Gaither*, 595 B.R. 201, 206.
[2] *Id.* at 208.
[3] *Id.* at 210-212, describing cases in which various defendants argued that the Internal Revenue Service and, by extension, a bankruptcy trustee, should be limited to the remedies under the Internal Revenue Code rather than allowing the Internal Revenue Service to also utilize the Federal Transfer Act.

7

the case, 29 U.S.C. § 1362, establishes the identity of parties who may be liable under ERISA for plan termination damages.

27. Second, the analysis in *Durango-Georgia Paper Co.* rests primarily on an application of legislative history and congressional intent. *Durango-Georgia Paper Co.*, 739 F.3d 1263, 1270-1273. An analysis that focuses on "policy or congressional intent" rather than the "plain language" of a statute is problematic. Although, *Durango-Georgia Paper Co.* does not apply the avoidance statutes, the same error in application is the reason that a split has arisen in applying Section 544 and the Federal Transfer Act. *In re Gaither*, 595 B.R. 201, 208. In the context of the Section 544 cases, the majority of Courts have affirmed that an inquiry must only look at the statutory language if the language is unambiguous. *See, e.g. In re Zagaroli* at *3. The same holds true in this case.

28. In their Joinder to Motions to Dismiss, the Defendants are requesting extraordinary relief. If they are successful, then bankruptcy trustees would be barred from pursuing avoidance claims through the PBGC, and the PBGC would be barred from pursuing avoidance claims by operation of the Bankruptcy Code. As explained in an analogous case:

> If Trustee were not allowed to exercise IRS's rights, a curious, and potentially inappropriate, result would obtain. Because of a debtor's bankruptcy filing, individual creditors, like IRS, are prevented by the Code from exercising its [sic] right to pursue transferees of avoidable transfers; only the bankruptcy trustee can pursue avoidance actions. However, IRS benefits from the operation of the bankruptcy laws because its statutory representative, the trustee, can pursue recovery of the transfers standing in its shoes, unconstrained by state-law extinguishment statutes. While the defendants argue against this model, under their approach, IRS would be deprived of its statutory right to recover the transfers the defendants received, and the trustee would be unable to do so, to the extent the avoidance action came too late under state law.

*Zagaroli* at *3, *citing In re CVAH* 570 B.R. at 835–36 (citations omitted).

4857-9675-3185, v. 3

29. This result is not supported by the applicable statutes or *Durango*. Nor would it align with the equitable factors underlying avoidance statutes.

30. If the Court *did* consider the Agency's purpose and adopted the Defendants' approach to limit the scope of the Federal Transfer Act, it would be exactly that – a limitation that the Act itself does not include. As noted above, there are no qualifications in the Federal Transfer Act, which one must apply prior to allowing an agency of the United States government from using the act. If the Court adopted the Defendants' position, it could have a significant impact on the Agency.[4]

## **CONCLUSION**

Based on the foregoing and such arguments as the Plaintiff may submit at the hearing on this matter, Plaintiff respectfully requests that this Court deny Defendant's Joinder to Motions to Dismiss Complaint.

Dated: May 23, 2022
      Charlotte, North Carolina

    HAMILTON STEPHENS
    STEELE + MARTIN, PLLC

    */s/ Melanie D. Johnson Raubach*
    Melanie D. Johnson Raubach (NC Bar No. 41929)
    525 North Tryon Street, Suite 1400
    Charlotte, North Carolina 28202
    Telephone: (704) 344-1117
    Facsimile:  (704) 344-1483
    mraubach@lawhssm.com
    *Attorney for Plaintiff*

---

[4] There is a suggestion in the Joinder to Motions to Dismiss that the Agency may not have previously filed avoidance actions based on the Federal Transfer Act. Plaintiff has conferred with the Agency, who confirmed that they *do* bring claims under the Federal Transfer Act, which have typically resulted in settlement. Both Plaintiff and the representatives of the Agency with whom he conferred are unaware of any case in which a defendant prosecuted a motion to dismiss aligning with the issues in the case *sub judice*.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, copies of the foregoing were served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case.

Dated: May 23, 2022
      Charlotte, North Carolina

                                            */s/ Melanie D. Johnson Raubach*
                                            Melanie D. Johnson Raubach

HAMILTON STEPHENS
STEELE + MARTIN, PLLC
525 North Tryon Street, Suite 1400
Charlotte, NC  28202

4857-9675-3185, v. 3