IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | |
|---|---|
| In re:<br><br>**JTR1, LLC f/d/b/a JTR, LLC**<br><br>   Debtor.<br><br>──────────────────────<br>**A. Burton Shuford, Trustee of the Bankruptcy Estate of JTR1, LLC f/d/b/a JTR, LLC,**<br><br>   Plaintiff,<br><br>vs.<br><br>**BJS Insurance, LLC** and **JJM, LLC,**<br><br>   Defendants. | Chapter 7<br><br>Case No. 20-30141<br><br><br><br><br><br><br><br>Adv. Proc. No. 22-03018 |

## SURREPLY BRIEF

NOW COMES Plaintiff A. Burton Shuford, Trustee of the Bankruptcy Estate of JTR1, LLC f/d/b/a JTR, LLC (the "Trustee" or "Plaintiff") and respectfully submits this Surreply Brief in response to the Reply to (A) Trustee's Response and Objection to Joinder to Motions to Dismiss and (B) Brief in Opposition to Joinder to Motions to Dismiss [Doc. 12] by BJS Insurance, LLC and JJM, LLC (the "Defendants") in this action.

## ARGUMENT

  a. **Case Law Regarding a Trustee's Right to Rely on the Internal Revenue Service and Claims under the Federal Transfer Act are Applicable in this Action**

  1. Many of the cases cited in Plaintiff's Brief in Opposition to Motion to Dismiss [Doc. 11] ("Plaintiff's Brief")[1] involve the factual scenario of a bankruptcy trustee stepping into the shoes of the Internal Revenue Service. See, i.e., *Hillen v. City of Many Trees, LLC* (*In re*

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in Plaintiff's Brief.

*CVAH, Inc.*), 570 B.R. 816, 825 (Bankr. D. Idaho 2017); *In re Zagaroli*, No. AP 20-05000, 2020 WL 6495156, at *2 (Bankr. W.D.N.C. Nov. 3, 2020); *In re Gaither*, 595 B.R. 201, 209 (Bankr. D.S.C. 2018).

2. The Defendants seek to distinguish and disregard the case law on this basis. The analysis in those cases applies equally to the Agency as it would to any federal government entity.

3. The Federal Transfer Act specifically names the parties allowed to rely thereon. Pursuant to Section 3306 of the Act:

> (a) In General.—In an action or proceeding under this subchapter for relief against a transfer or obligation, *the United States*, subject to section 3307 and to applicable principles of equity and in accordance with the Federal Rules of Civil Procedure, may obtain—
>
> (1) avoidance of the transfer or obligation to the extent necessary to satisfy the debt to the United States;
>
> (2) a remedy under this chapter against the asset transferred or other property of the transferee; or
>
> (3) any other relief the circumstances may require.

28 U.S.C. § 3306(a) (emphasis added).

4. The "United States" is defined as:

> (A) Federal corporation;
> (B) an agency, department, commission, board, or other entity of the United States; or
> (C) an instrumentality of the United States.

28 U.S.C. § 3302(15).

5. Application of the definition, and scope of the Federal Transfer Act, is a straight-forward issue. *See, e.g.*, *FTC v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 320 (5th Cir. 2004) (determining that the Federal Trade Commission is the United States for purposes of the Federal Transfer Act).

6. The PBGC is a wholly owned United States government corporation. *See* 29 U.S.C. § 1302. As such, the PBGC is authorized to rely on the Federal Transfer Act to the same extent as any other government entity. The law establishing the scope and effect of the Federal Transfer Act applies in this case.

**b. The PBGC is *not* Limited to the Actions Identified by the Defendants**

7. In violation of Local Rule of Bankruptcy Procedure 9013-2(b), Defendants advance a new line of argument in the Defendants' Reply Brief. This argument relies on the premise that the statutes, which created the Agency, also severely limited its collection powers.

8. It is agreed that the Agency was formed pursuant to Subchapter III of the Employee Retirement Income Security Act ("ERISA"), appearing at 29 U.S.C. §§ 1301-1461, and that those provisions set parameters as to causes of actions the Agency may pursue. See, e.g., *Pension Ben. Guar. Corp. v. Scherling*, 905 F.2d 173, 175 (8th Cir. 1990).

9. The statutes do not; however, limit the Agency's possible causes of action to strictly claims under ERISA.

10. For instance, Section 1342(d)(1)(B)(iv) of ERISA authorizes the Agency "to commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan" and Section 1342(d)(1)(B)(viii) of ERISA empowers the Agency "to do such other acts as may be necessary to comply with this subchapter or any order of the court and to protect the interests of plan participants and beneficiaries".

11. In reliance on its authorizing statutes, the Agency may proceed, and has proceeded, under laws other than those created by ERISA. See, e.g., *In re J. L. Thomson Rivet Corp.*, 19 B.R. 385 (Bankr. D. Mass. 1982) (ruling that the Agency may assert a state law claim independent of its claim for termination liability under ERISA); *Cox Enter., Inc. v. PBGC*, 666 F.3d 697 (11th

Cir. 2012), vacating and remanding 2010 WL 3220198 (M.D. Fla. Aug. 13, 2010); 794 F.3d 1259 (11th Cir. 2015), aff'g 59 Employee Benefits Cas. (BNA) 1745, 2014 WL 3962694 (M.D. Fla. Aug. 13, 2014) (resolving the case on other issues but acknowledging the Agency's argument under the Federal Transfer Act); *PBGC v. United Tool & Stamping Co. of N.C.*, 2017 WL 6001490, 2017 BL (Bloomberg/BNA) 432816 (D.N.J. Dec. 4, 2017) (denying a motion to dismiss and permitting the Agency to pursue a state law breach of contract action).

12. Based on a review of case filings, it appears that many cases involving the Agency have been resolved by settlement or by entry of orders that do not result in a published opinion. *PBGC v. The Renco Group, Inc*. is one such case, which is comparable to the current analysis. (S.D.N.Y, Case No. 13-cv-621-RJS). In the *Renco* suit, as in the current case, the defendant filed a Motion to Dismiss, in which they argued that the non-ERISA causes of action must be dismissed.[2] *Renco Order* (as defined below), p. 5. The defendant argued that the Agency lacked statutory authority to proceed with the state law claims and that the state law claims were preempted by the adoption of ERISA. *Id.*

13. The court denied the Motion to Dismiss. See gen. *Renco* Order. Though the order was not published as an opinion, the reasoning applied by the Court in reaching its decision is useful. A copy of the order denying the motion to dismiss (the "*Renco* Order") is attached hereto as <u>Exhibit A</u>.

14. As more fully articulated in the *Renco* Order, there are both particularized rights to sue provided under ERISA to the Agency and a general capacity authorizing the Agency to sue. *Renco* Order p. 6. The corporation "has the power…to sue and be sued, complain and defend, in

---

[2] The causes of action in *Renco* arose under New York state law, not the Federal Transfer Act.

its corporate name and through its own counsel, in any court, State or Federal…" *Id. (*quoting 29 U.S.C. § 1302(b)(1)).

15. As the court explained:

> [t]o give just one trivial example, Section 4002(b) [29 U.S.C. § 1302(b)(5)] authorizes PBGC to lease property and to enter into contracts. Were some party to breach its lease or contract with PBGC, PBGC would clearly have capacity under Section 4002(b)(1) [29 U.S.C. § 1302(b)(1)] to sue under state property or contract law to enforce its rights.
>
> *Id.*

16. As the court continues:

> …the mere fact that PBGC is authorized to bring enforcement actions under Section 4003(e) [29 U.S.C. § 1303(e)] does not suggest that PBGC is barred from bringing other actions under state law, including claims for fraud, fraudulent concealment, and negligent misrepresentation. Since Section 4002(b)(1) [29 U.S.C. § 1302(b)(1)] expressly authorizes PBGC to "sue and be sued, complain and defend, in its corporate name and through its own counsel, in any court, State or Federal," there can be no serious argument that PBGC lacks statutory authority to prosecute state law claims in federal court.
>
> *Renco* Order p. 7.

17. The *Renco* approach is actually in accord with the *Scherling* and *Bank One* cases cited by the Defendants. See *Pension Ben. Guar. Corp. v. Scherling*, 905 F.2d 173 (8th Cir. 1990) and *Pension Ben. Guar. Corp. v. Bank One*, 34 F.Supp.2d 608 (S.D. Ohio. 1998).

18. In those cases, the courts analyze the provisions of ERISA to determine the relevant statute of limitations for a "breach of fiduciary duty" claim brought by the Agency. See gen. *Scherling*, 905 F.2d 173; *Bank One*, 34 F.Supp.2d 608.

19. Both courts determined that the Agency was required to bring the claim under a Subchapter III provision of ERISA and that the Agency was barred from relying on a similar provision of Subchapter I. *Scherling*, 905 F.2d 173, 175-176; *Bank One*, 34 F.Supp.2d 608, 610-611. The Agency's inability to proceed under the Subchapter I claim was not due to any limitation

that exists under Subchapter III. *Scherling*, 905 F.2d 173, 175-176; *Bank One*, 34 F.Supp.2d 608, 610-611. Rather, the courts' decisions were due to limiting language in *Subchapter I*. See *Scherling*, 905 F.2d 173, 175-176. The statute at issue in these cases (which is irrelevant to the current proceeding) provides that the Subchapter I action for breach of fiduciary duty "may be brought by the Secretary of Labor, a plan participant, or another fiduciary". *Scherling*, 905 F.2d 173, 175 (citing 29 U.S.C. § 1132). The Agency, acting as a plan trustee, did not qualify as any of those parties. *Scherling*, 905 F.2d 173, 175.

20. That is directly opposite to the case *sub judice*. The Agency was specifically created in order to protect and assist plan beneficiaries in collecting their anticipated pension benefits. See, e.g., *In re J. L. Thomson Rivet Corp*., 19 B.R. 385, 387. It was empowered to "sue and be sued"[3], "to commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan"[4], and "to do such other acts as may be necessary to comply with this subchapter…and to protect the interests of plan participants and beneficiaries"[5]. The Agency has brought actions under the Federal Transfer Act, and it should bring actions under the Federal Transfer Act, to collect the amounts due to it. There is no restriction in the ERISA statutes, which prevent the Agency action, and the language of the Federal Transfer Act clearly allow it.

## **CONCLUSION**

Based on the foregoing and such arguments as the Plaintiff may submit at the hearing on this matter, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss Complaint.

[Signatures on following page].

---

[3] 29 U.S.C. § 1302(b)(1)
[4] 29 U.S.C. 1342(d)(1)(B)(iv)
[5] 29 U.S.C. 1342(d)(1)(B)(viii)

Dated: May 27, 2022
      Charlotte, North Carolina

                HAMILTON STEPHENS
                STEELE + MARTIN, PLLC

                */s/ Melanie D. Johnson Raubach*
                Melanie D. Johnson Raubach (NC Bar No. 41929)
                525 North Tryon Street, Suite 1400
                Charlotte, North Carolina 28202
                Telephone: (704) 344-1117
                Facsimile:  (704) 344-1483
                mraubach@lawhssm.com
                *Attorney for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on this date, copies of the foregoing were served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case.

Dated: May 27, 2022
       Charlotte, North Carolina

                                                       */s/ Melanie D. Johnson Raubach*
                                                       Melanie D. Johnson Raubach

HAMILTON STEPHENS
STEELE + MARTIN, PLLC
525 North Tryon Street, Suite 1400
Charlotte, NC  28202

4872-1799-7602, v. 1