**<u>EXHIBIT A</u>**

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.: 20-30141 |
| | ) | |
| JTR1, LLC, | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| A. Burton Shuford, Trustee for JTR1, LLC f/d/b/a/ | ) | |
| JTR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 22-03004 |
| | ) | |
| Richard Kearns and Ysbell Kearns, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OBJECTION TO MOTION FOR RELIEF FROM JUDGMENT

Richard Kearns and Ysbell Kearns (together the "Kearnses"), by and through undersigned counsel, hereby submits this objection (the "Objection") to the Motion for Relief from Judgment [Doc. 26] (the "Motion") filed by Plaintiff A. Burton Shuford, Trustee of the Bankruptcy Estate of JTR1, LLC f/d/b/a JTR, LLC (the "Trustee" or "Plaintiff"). The Motion to Reconsider should be denied because:

(a) it appears that the true driving force behind the Trustee's Motion is the Pension Benefit Guaranty Corporation's (PBGC) failure to participate in the Motion to Dismiss – as it is only now, after an adverse ruling, that the PBGC wishes to opine on the underlying issues in this dismissed adversary proceeding;

(b) the Trustee has not made a showing of mistake, inadvertence, surprise, or excusable neglect;

(c) the Trustee and the PBGC each were permitted ample time to prepare for and defend against the Motion to Dismiss and, in fact, conferred and worked in unison to oppose the Motion to Dismiss; and

(d) there is no reason justifying another bite at the apple for the Trustee and PBGC.

## BACKGROUND

1.　　On February 3, 2022, the Trustee filed its Complaint [Doc. 1] (the "Complaint").

2.　　On March 28, 2022, the Kearnses filed the Motion to Dismiss [Doc. 8].

3.　　On April 14, 2022, the Trustee filed its Response and Objection [Doc. 10] (the "Response"). In pertinent part, the Response argues that "[b]ased on the plain language of . . . the FDCPA, the Trustee has the ability to pursue the claims asserted in this case." Response at ¶ 11. Presumably, the Trustee adequately researched whether this legal conclusion was supported by the relevant law.

4.　　On May 23, 2022, the Trustee filed his Brief in Opposition to Motion to Dismiss [Doc. 12] (the "First Brief"). In pertinent part, the part the First Brief argues that "[t]he Court's inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" Doc. 12 at ¶ 11 (citation omitted). The First Brief goes on to argue specifically that the Court's interpretation of the FDCPA should be limited to the language of the statute as "[t]he language of the [FDCPA] is clear and unambiguous." *Id*. at ¶¶ 21-22. The First Brief further specifically acknowledges the argument that the FDCPA "is limited to recover ***only*** a 'debt to the United States.'" *Id*. at ¶ 24 (citing *In re Gaither*, 595 B.R. 201, 206 (Bankr. D.S.C. 2018) (emphasis in original).

5.　　Critically, the First Brief acknowledges the risk that an adverse ruling would, effectively, mean that "the ***PBGC would be barred from pursuing avoidance claims*** [under the FDCPA]." *Id*. at ¶ 28. This potential result was well known and appreciated. *Id*. at ¶ 30 ("If the Court adopted the Defendants' position, it could have a significant impact on the [PBGC]"). In fact, it is because of the potential impact that an adverse ruling would have on the PBGC that the Trustee "conferred with the [PBGC], who confirmed that they ***do*** bring claims under the [FDCPA], which typically resulted in settlement . . . [and] [b]oth [the Trustee] and the representatives of the [PBGC] with whom he conferred are unaware of any case in which a defendant prosecuted a motion to dismiss aligning with the issues of the case ***sub judice***." *Id*. at footnote 5 (emphasis in the original).

6.　　Again, given the PBGC and Trustee's awareness of the known risks attendant to an adverse ruling, presumably, the Trustee and PBGC took the Motion to Dismiss seriously when researching, conversing, and preparing to oppose the same.

7.　　On May 27, 2022, the Trustee filed his Surreply Brief [Doc. 15] (the "Second Brief"). In pertinent part, the Second Brief specifically acknowledges that the PBGC "was

specifically created in order to protect and assist plan beneficiaries *in collecting their* anticipated pension benefits." Doc. 15 at ¶ 20 (citation omitted) (emphasis added).

8.    On May 31, 2022, the Court held its initial hearing on the Motion to Dismiss (the "Initial Hearing"). During the Initial Hearing, counsel for the Trustee represented that the Trustee "spent a lot of time researching the issues in this case." Audio, Doc. 17 at 13:08. Counsel for the Trustee further acknowledged that the PBGC was consulted and was involved in defending against the argument that the PBGC does not have authority to use the FDCPA. *Id*. at 15:10. In fact, counsel for the Trustee surmised that the Trustee may have been better prepared to argue against the Motion to Dismiss because of the PBGC's assistance. *Id*. Specifically, it was stated that "in my research . . . *I also had the benefit* that, perhaps the other attorneys involved here did not, of *speaking directly to the PBGC in preparation for these hearings*." *Id*. (emphasis added). The Trustee went on to acknowledge that, because there were no cases permitting the PBGC to use the FDCPA, the Court must look to the statutes. *Id*. at 16:07.

9.    During the Initial Hearing, the Court did not rule on the Motion to Dismiss. It did, however, acknowledge the costs and difficulties attendant to appeal by either party. Consequently, the Court wisely suggested that the parties coordinate a cost effective solution to the potential appeal of its ruling. To that end, the Court graciously (a) permitted the parties an additional seven days to submit any further cases or information for the Court's consideration and (b) continued the hearing to June 14, 2022 to afford the parties an opportunity to figure out a streamlined way to avoid unnecessary costs associated with appeal and this litigation.

10.   On June 7, 2022, the Trustee filed its Supplement to Response and Objection to Motion to Dismiss [Doc. 18] (the "Third Brief"). The Third Brief did not include any further information from the PBGC nor did it include any further cases for the Court's consideration.

11.   On June 14, 2022, the Court held its first continued hearing on the Motion to Dismiss (the "Second Hearing"). At the outset of the Second Hearing, the parties requested that the Court rule on the Motion to Dismiss. The Court granted the Motion to Dismiss and, in view of that announcement, again offered the parties an opportunity to agree to an *efficient and cost effective* way to resolve a potential appeal by the Trustee. The parties did, in fact, discuss next steps in light of the Court's ruling. The Trustee indicated to the court that the parties were in agreement as to the next steps – as to the desire for a single clean issue on appeal (the Trustee's ability to step into the shoes of the PBGC for the purpose of asserting a claim under the FDCPA) – but would like a continuance to further flesh out the exact details as to the next steps. Again,

the Court graciously continued the hearing to June 22, 2022 to afford another opportunity to fine tune the details of the parties' next steps with respect to the ruling on the Motion to Dismiss.

12. On June 22, 2022, the Court held its second continued hearing (the "Third Hearing"). At the Third Hearing, counsel for the Trustee informed the Court that "all of the counsel appearing in these APs . . . have reached an agreement to those next steps . . . what we believe is likely is that after we have the chance to review your Honor's written order we may pursue an appeal to get a final determination . . . pending the resolution of that appeal, what we would like to do is hold the cases that are not fully resolved . . ." Audio, Doc. 22 at 2:15. In other words, the parties agreed to stay ruling on other matters pending resolution of a possible appeal of the Court's Order granting the Motion to Dismiss. There was no agreement or discussion of a motion to reconsider.

13. Notably, the PBGC, itself, did not appear in any of the hearings in this Adversary Proceeding. Likewise, the PBGC, itself, did not file any responses, briefs, or other pleadings in this Adversary Proceeding. The PBGC's lack of attention to this matter is quite surprising given that (a) the PBGC was aware of the risks associated with an adverse ruling and (b) the PBGC assisted the Trustee in preparing for and defending against the Motion to Dismiss. It is impossible to know PBGC's reasoning for laying dormant until the adverse ruling but, in any event, it made the decision not (outside of assisting the Trustee) to participate in this Adversary Proceeding.

14. On July 28, 2022, the Court entered its Order Granting Motion to Dismiss [Doc. 25] (the "Order"). Not surprisingly, the issue addressed in the Order is "whether the Trustee pursuant to 11 U.S.C. § 544(b) may step into the shoes of the PBGC and exercise the fraudulent transfer provisions of the . . . [FDCPA] as the basis for avoiding and recovering the Transfers from the Defendants." Doc. 25. The Court held that it could not. *Id*. In reaching this conclusion, the Court held that "the Transfers that the PBGC is attempting to collect on behalf of the Freedom Plan and its beneficiaries do not meet the definition of a 'debt owing to the United States' under the FDCPA." *Id*. This holding could not have come as a surprise to the Trustee because, as the Trustee specifically acknowledged in the First Brief, there is an argument that the FDCPA "is limited to recover *only* a 'debt to the United States.'" Doc. 12 at footnote 5 (emphasis added). Likewise, this could not have come as a surprise to the PBGC because the Trustee conferred with the PBGC throughout the course of this Adversary Proceeding. *Id*.

15. Nevertheless, the PBGC, through the Trustee, now seeks to avoid the consequences of its voluntary inaction. Accordingly, on August 8, 2022, the Trustee filed the

4

Motion and, simultaneously, the PBGC filed its Motion to Intervene or Otherwise be Heard [Doc. 27] (the "Motion to Intervene").

## THE MOTION

16.     The Motion seeks relief from the Order pursuant to Rules 60(b)(1) and (6) of the Federal Rules of Civil Procedure.  In support of this relief, the Trustee asserts that it "has discovered case law, which it believes could influence the Court's decision . . . [and] with the assistance of the [PBGC], the [Trustee] has reviewed certain findings that the Court included in the Order, which relate to the formation, purpose, and operations of the PBGC." Doc. 26 at ¶¶ 6-7.  The Trustee further purported to support the Motion with two declarations. *Id*. at ¶ 8.  In actuality, the cases and declarations the Trustee now seeks to argue and introduce are not new or novel and do not bear on the Court's correct ruling that there is no debt owed to the PBGC.

17.     Rule 60(b)(1) provides that the "court may relieve a party or its legal representative from a final judgment . . . for . . . mistake, inadvertence, surprise, or excusable neglect."  "Whether neglect is 'excusable' has been determined to be an equitable inquiry, taking into account all relevant circumstances." *In re Coker*, No. 14-00223-5-RDD, 2014 WL 6660370, at *3 (Bankr. E.D.N.C. Nov. 21, 2014) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).  The relevant circumstances are "prejudice to the [nonmoving] party, the length of the delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.  Rule 60(b)(6) provides for relief from a judgment for "any other reason that justifies relief."

18.     The Trustee should not be granted relief from the Order.  There has been no mistake, no inadvertence, surprise, or excusable neglect.  In fact, the Motion does not even suggest that there has been any ground justifying relief under Rule 60 – the facts and issues have been known by all parties and each of the parties, fully aware of the risks of an adverse ruling, has had more than an adequate opportunity to prepare and defend its position.  The Motion instead appears to reflect the frustration that is common among all parties subject to an adverse ruling.  In other words, there is nothing novel about the allegations in the Motion and certainly nothing justifying relief from the Order.  It appears that the Motion can best be summarized as a request by the PBGC, through the Trustee, to get another bite at the apple, as a result of the adverse ruling in the Order.  This is certainly not equitable and is not a reason sufficient to justify relief from the Order.

19.     Again, taking the Motion for face value, the Trustee alleges that relief is warranted because (a) it is now aware of law that it previously didn't know of and (b) the PBGC has now decided to help clarify facts that the Court allegedly got wrong. Addressing each of the Trustee's cited reasons for relief from the Order, it could not be more clear that relief is not justified.

**The Case Law the Trustee Seeks to Rely on does not Justify Relief from the Order**

20.     The case law the Trustee now seeks to have considered does not provide a ground for the relief requested in the Motion. These cases are not new or novel. In fact, the opinions range from 1999-2021 – all well before the Trustee filed its Response, First Brief, Second Brief, and Third Brief.[1]  Likewise, all of the opinions were available prior to each of the hearings in this Adversary Proceeding. The parties each had ample opportunity (approximately 5 months),[2] to conduct legal research and discover, brief, and argue these cases. In fact, the Court urged the parties to submit supplemental briefings throughout the course of this Adversary Proceeding. Nevertheless, the Trustee claims that it only now just discovered these opinions. It was completely within the Trustee's control to discover and argue these cases – the fact that it chose not to do so is not a reason for relief from the Order.

21.     Moreover, none of the supposedly newly found opinions have the ability to "influence the Court's decision." In fact, the Order specifically cites to one of the cases – *Bedi* – that the Trustee believes the Court needs to review prior to making its decision. Doc. 25 (Noting that the Second Circuit's ruling in *Bedi* is in line with the Fifth Circuit's decision in *Sobranes* – that the Government could not rely on the FDCPA to collect money originally owed to private parties). Like the parties, the Court had the opportunity to thoroughly research the issues at hand. It did so and it found and reviewed these cases prior to reaching its decision and entering the Order. The Court correctly concluded, based on the applicable law, that there is no "debt" owed to the PBGC within the context of the FDCPA and, consequently, the Trustee cannot step into the shoes of the PBGC to utilize the FDCPA. Simply put, the Court was correct the first time and none of the cases the Trustee now seeks to argue change or contradict the Court's analysis.

---

[1] In fact, the undersigned reviewed all but one of these cases prior to submitting its own pleadings.

[2] The Complaint was filed February 3, 2022 and the Order entered July 28, 2022.

### The Declarations do not Justify the Relief from the Order

22.     The declarations now offered by the Trustee do not bear on the Court's analysis under Rule 12(b)(6).  As the Trustee and PBGC are well aware, to have survived the Motion to Dismiss, the Complaint must have contained sufficient factual matter that when accepted as true, "state[d] a claim to relief that is plausible its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, Rule 12(b)(6) requires that the court consider only the allegations on the face of the Complaint – not extrinsic evidence.  In fact, as the Trustee repeatedly argued – the issue before the court was purely legal and limited to interpretation of the clear and unambiguous statutes.  The declarations were not and are not proper considerations in the context of the Motion to Dismiss or Order.

23.     Even assuming the declarations were appropriate considerations – which they are not – the Trustee has had the benefit of the PBGC's assistance throughout this Adversary Proceeding and could have presented these declarations at any time prior to entry of the Order. In fact, the Trustee has suggested that it was because of the PBGC's assistance that it had an advantage over the other parties.  There is no reason to now afford the Trustee an additional opportunity to obtain help from the PBGC – the Trustee had three briefs and several hearings in which it could have obtained, and it did obtain, assistance from the PBGC.  Nothing prevented the Trustee from obtaining the declarations from the PBGC – although they would not be proper considerations with respect to the Motion to Dismiss.

24.     Even assuming the Trustee obtained these declarations in a timely manner and the declarations were proper consideration for a motion to dismiss, the outcome of this Adversary Proceeding would remain unchanged.  The declarations do not identify any debt owed to the PBGC.  Likewise, they do not identify any circumstance in which the United States, itself, would benefit from recovering monies under the FDCPA – nor could they.  *See Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 333 (4th Cir. 2007) ("As trustee, the PBGC must hold all plan assets, including assets recovered through litigation, ***in trust for the plan***"); *In re Art Metal U.S.A., Inc.*, 109 B.R. 74, 83 (Bankr. D.N.J. 1989) ("The funds recoverable in an action commenced by . . . the PBGC would not inure to the benefit of the United States.").  In any event, the information the PBGC now seeks to provide is not new or novel and certainly does not change the Court's analysis.

25.     For the reasons stated above, the Trustee could have proffered the declarations at any time between the time it filed the Complaint on February 3, 2022 and entry of the Order on July 28, 2022.  The Trustee does not have a good reason for the delay – nor any reason at all –

and the declarations do not change the Court's well-reasoned analysis and, critically, should not be considered at all. The declarations do not justify relief from the Court's Order.

**It would be Inequitable to Grant Relief from the Order**

26.     It would be inequitable to grant the Trustee's Motion for several additional reasons. First, the parties agreed to "next steps" with respect to the Trustee's potential appeal. Throughout the hearings on the Motion to Dismiss, the parties and Court remained in agreement as to the need to minimize costs and efficiently conduct an appeal, if appropriate. The Trustee remained committed to this path until recently. Presumably, the Trustee, and more likely, the PBGC, now appreciates the consequences of the Motion to Dismiss and Order. While it is understandable that the Trustee and PBGC would like an additional two bites at the apple (reconsideration plus appeal), the parties agreed to an appeal, if appropriate. Second, the costs to the Kearnses is great. As repeatedly acknowledged throughout this Adversary Proceeding, the Kearnses are individuals with limited resources who desire to end this matter as efficiently as possible. For each pleading and hearing in this Adversary Proceeding, the Kearnses incur additional and, to the extent they relate to this Motion and the Motion to Intervene, unnecessary costs. Allowing the Trustee and PBGC to further delay resolution of this matter is inequitable in light of the actions of the Trustee and PBGC as well as the costs to the Kearnses.

## CONCLUSION

27.     The case law and facts now propounded by the Trustee are not new or novel and, in any event, certainly could have been discovered months prior to entry of the Order. Even had the Trustee acted in a timely fashion, the cases and facts do not change the Court's analysis of the FDCPA or the PBGC's ability to utilize it. If anything, the case law the Trustee now seeks to have considered supports the conclusion that the PBGC cannot use the FDCPA as there is no "debt" owed to the PBGC within the meaning of the FDCPA. Similarly, the declarations the Trustee now seeks to rely on are of no help to the Trustee. Critically, the allegations contained in the declarations do not identify – nor could they identify – any debt owed to the United States. Furthermore, the declarations are inappropriate in the context of the Motion to Dismiss and Order as Rule 12(b)(6) requires that the Court only consider the allegations on the face of the Complaint.

28.     Based on a review of the Order and the Motion, it is abundantly clear that the Court made the correct decision in entering the Order. It carefully reviewed the allegations of the Complaint and the applicable law and reached the correct conclusion.

PPAB 7902618v2

29.    Based on the foregoing and such arguments as Defendants Richard Kearns and Ysbell Kearns may submit in any brief filed on their behalf or at the hearing on this matter, Defendants Richard Kearns and Ysbell Kearns respectfully request that the Trustee's Motion for Relief from Judgment be denied.

This the 8th day of September, 2022.

/s/ Ashley A. Edwards, Esq.
Ashley A. Edwards, Esq. (N.C. Bar No. 40695)
Phillip M. Fajgenbaum, Esq. (N.C. Bar No. 52128)
Parker Poe Adams & Bernstein LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
ashleyedwards@parkerpoe.com
phillipfajgenbaum@parkerpoe.com
pattyadcroft@parkerpoe.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **OBJECTION TO MOTION FOR RELIEF FROM JUDGMENT** was served on this day via the Court's CM/ECF electronic e-mail service on the following:

Melanie D. Johnson Raubach
Hamilton Stephens Steele Martin PLLC
525 N. Tryon Street, Suite 1400
Charlotte, NC 28202
*Attorney for Plaintiffs*

This the 8th day of September, 2022.

/s/ Ashley A. Edwards, Esq.
Ashley A. Edwards, Esq. (N.C. Bar No. 40695)
Phillip M. Fajgenbaum, Esq. (N.C. Bar No. 52128)
Parker Poe Adams & Bernstein LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
ashleyedwards@parkerpoe.com
phillipfajgenbaum@parkerpoe.com
pattyadcroft@parkerpoe.com
*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.: 20-30141 |
| | ) | |
| JTR1, LLC, | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |

| | | |
|---|---|---|
| A. Burton Shuford, Trustee for JTR1, LLC f/d/b/a/ | ) | |
| JTR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 22-03008 |
| | ) | |
| Mark Mullady, | ) | |
| | ) | |
| Defendant. | ) | |

**OBJECTION TO MOTION FOR RELIEF FROM JUDGMENT**

Mark Mullady ("Mullady"), by and through undersigned counsel, hereby submits this objection (the "Objection") to the Motion for Relief from Judgment [Doc. 27] (the "Motion") filed by Plaintiff A. Burton Shuford, Trustee of the Bankruptcy Estate of JTR1, LLC f/d/b/a JTR, LLC (the "Trustee" or "Plaintiff"). The Motion to Reconsider should be denied because:

(a) it appears that the true driving force behind the Trustee's Motion is the Pension Benefit Guaranty Corporation's (PBGC) failure to participate in the Motion to Dismiss – as it is only now, after an adverse ruling, that the PBGC wishes to opine on the underlying issues in this dismissed adversary proceeding;

(b) the Trustee has not made a showing of mistake, inadvertence, surprise, or excusable neglect;

(c) the Trustee and the PBGC each were permitted ample time to prepare for and defend against the Motion to Dismiss and, in fact, conferred and worked in unison to oppose the Motion to Dismiss; and

(d) there is no reason justifying another bite at the apple for the Trustee and PBGC.

**BACKGROUND**

1.      On February 4, 2022, the Trustee filed its Complaint [Doc. 1] (the "Complaint").

2.      On March 28, 2022, Mullady filed the Motion to Dismiss [Doc. 9].

3.      On April 14, 2022, the Trustee filed its Response and Objection [Doc. 11] (the "Response").  In pertinent part, the Response argues that "[b]ased on the plain language of . . . the FDCPA, the Trustee has the ability to pursue the claims asserted in this case."  Doc. 11 at ¶ 11.  Presumably, the Trustee adequately researched whether this legal conclusion was supported by the relevant law.

4.      On May 23, 2022, the Trustee filed his Brief in Opposition to Motion to Dismiss [Doc. 13] (the "First Brief").  In pertinent part, the part the First Brief argues that "[t]he Court's inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'"  Doc. 13 at ¶ 11 (citation omitted).  The First Brief goes on to argue specifically that the Court's interpretation of the FDCPA should be limited to the language of the statute as "[t]he language of the [FDCPA] is clear and unambiguous."  *Id*. at ¶¶ 21-22.  The First Brief further specifically acknowledges the argument that the FDCPA "is limited to recover **only** a 'debt to the United States.'"  *Id*. at ¶ 24 (citing *In re Gaither*, 595 B.R. 201, 206 (Bankr. D.S.C. 2018) (emphasis in original).

5.      Critically, the First Brief acknowledges the risk that an adverse ruling would, effectively, mean that "the **PBGC would be barred from pursuing avoidance claims** [under the FDCPA]."  *Id*. at ¶ 28.  This potential result was well known and appreciated.  *Id*. at ¶ 30 ("If the Court adopted the Defendants' position, it could have a significant impact on the [PBGC]").  In fact, it is because of the potential impact that an adverse ruling would have on the PBGC that the Trustee "conferred with the [PBGC], who confirmed that they **do** bring claims under the [FDCPA], which typically resulted in settlement . . . [and] [b]oth [the Trustee] and the representatives of the [PBGC] with whom he conferred are unaware of any case in which a defendant prosecuted a motion to dismiss aligning with the issues of the case **sub judice**."  *Id*. at footnote 5 (emphasis in the original).

6.      Again, given the PBGC and Trustee's awareness of the known risks attendant to an adverse ruling, presumably, the Trustee and PBGC took the Motion to Dismiss seriously when researching, conversing, and preparing to oppose the same.

7.      On May 27, 2022, the Trustee filed his Surreply Brief [Doc. 15] (the "Second Brief").  In pertinent part, the Second Brief specifically acknowledges that the PBGC "was specifically created in order to protect and assist plan beneficiaries **in collecting their** anticipated pension benefits."  Doc. 15 at ¶ 20 (citation omitted) (emphasis added).

8.      On May 31, 2022, the Court held its initial hearing on the Motion to Dismiss (the "Initial Hearing").  During the Initial Hearing, counsel for the Trustee represented that the Trustee "spent a lot of time researching the issues in this case."  Audio, Doc. 17 at 13:08. Counsel for the Trustee further acknowledged that the PBGC was consulted and was involved in defending against the argument that the PBGC does not have authority to use the FDCPA.  *Id*. at 15:10.  In fact, counsel for the Trustee surmised that the Trustee may have been better prepared to argue against the Motion to Dismiss because of the PBGC's assistance.  *Id*.  Specifically, it was stated that "in my research . . . ***I also had the benefit*** that, perhaps the other attorneys involved here did not, of ***speaking directly to the PBGC in preparation for these hearings***."  *Id*. (emphasis added).  The Trustee went on to acknowledge that, because there were no cases permitting the PBGC to use the FDCPA, the Court must look to the statutes.  *Id*. at 16:07.

9.      During the Initial Hearing, the Court did not rule on the Motion to Dismiss.  It did, however, acknowledge the costs and difficulties attendant to appeal by either party. Consequently, the Court wisely suggested that the parties coordinate a cost effective solution to the potential appeal of its ruling.  To that end, the Court graciously (a) permitted the parties an additional seven days to submit any further cases or information for the Court's consideration and (b) continued the hearing to June 14, 2022 to afford the parties an opportunity to figure out a streamlined way to avoid unnecessary costs associated with appeal and this litigation.

10.     On June 7, 2022, the Trustee filed its Supplement to Response and Objection to Motion to Dismiss [Doc. 18] (the "Third Brief").  The Third Brief did not include any further information from the PBGC nor did it include any further cases for the Court's consideration.

11.     On June 14, 2022, the Court held its first continued hearing on the Motion to Dismiss (the "Second Hearing").  At the outset of the Second Hearing, the parties requested that the Court rule on the Motion to Dismiss.  The Court granted the Motion to Dismiss and, in view of that announcement, again offered the parties an opportunity to agree to an ***efficient and cost effective*** way to resolve a potential appeal by the Trustee.  The parties did, in fact, discuss next steps in light of the Court's ruling.  The Trustee indicated to the court that the parties were in agreement as to the next steps – as to the desire for a single clean issue on appeal (the Trustee's ability to step into the shoes of the PBGC for the purpose of asserting a claim under the FDCPA) – but would like a continuance to further flesh out the exact details as to the next steps.  Again, the Court graciously continued the hearing to June 22, 2022 to afford another opportunity to fine tune the details of the parties' next steps with respect to the ruling on the Motion to Dismiss.

PPAB 7986308v1

12.     On June 22, 2022, the Court held its second continued hearing (the "Third Hearing"). At the Third Hearing, counsel for the Trustee informed the Court that "all of the counsel appearing in these APs . . . have reached an agreement to those next steps . . . what we believe is likely is that after we have the chance to review your Honor's written order we may pursue an appeal to get a final determination . . . pending the resolution of that appeal, what we would like to do is hold the cases that are not fully resolved . . ." Audio, Doc. 23 at 2:15. In other words, the parties agreed to stay ruling on other matters pending resolution of a possible appeal of the Court's Order granting the Motion to Dismiss. There was no agreement or discussion of a motion to reconsider.

13.     Notably, the PBGC, itself, did not appear in any of the hearings in this Adversary Proceeding. Likewise, the PBGC, itself, did not file any responses, briefs, or other pleadings in this Adversary Proceeding. The PBGC's lack of attention to this matter is quite surprising given that (a) the PBGC was aware of the risks associated with an adverse ruling and (b) the PBGC assisted the Trustee in preparing for and defending against the Motion to Dismiss. It is impossible to know PBGC's reasoning for laying dormant until the adverse ruling but, in any event, it made the decision not (outside of assisting the Trustee) to participate in this Adversary Proceeding.

14.     On July 28, 2022, the Court entered its Order Granting Motion to Dismiss [Doc. 26] (the "Order"). Not surprisingly, the issue addressed in the Order is "whether the Trustee pursuant to 11 U.S.C. § 544(b) may step into the shoes of the PBGC and exercise the fraudulent transfer provisions of the . . . [FDCPA] as the basis for avoiding and recovering the Transfers from the Defendants." Doc. 26. The Court held that it could not. *Id*. In reaching this conclusion, the Court held that "the Transfers that the PBGC is attempting to collect on behalf of the Freedom Plan and its beneficiaries do not meet the definition of a 'debt owing to the United States' under the FDCPA." *Id*. This holding could not have come as a surprise to the Trustee because, as the Trustee specifically acknowledged in the First Brief, there is an argument that the FDCPA "is limited to recover *only* a 'debt to the United States.'" Doc. 13 at footnote 5 (emphasis added). Likewise, this could not have come as a surprise to the PBGC because the Trustee conferred with the PBGC throughout the course of this Adversary Proceeding. *Id*.

15.     Nevertheless, the PBGC, through the Trustee, now seeks to avoid the consequences of its voluntary inaction. Accordingly, on August 8, 2022, the Trustee filed the Motion and, simultaneously, the PBGC filed its Motion to Intervene or Otherwise be Heard [Doc. 28] (the "Motion to Intervene").

## THE MOTION

16.     The Motion seeks relief from the Order pursuant to Rules 60(b)(1) and (6) of the Federal Rules of Civil Procedure.  In support of this relief, the Trustee asserts that it "has discovered case law, which it believes could influence the Court's decision . . . [and] with the assistance of the [PBGC], the [Trustee] has reviewed certain findings that the Court included in the Order, which relate to the formation, purpose, and operations of the PBGC."  Doc. 27 at ¶¶ 6-7.  The Trustee further purported to support the Motion with two declarations.  *Id.* at ¶ 8.  In actuality, the cases and declarations the Trustee now seeks to argue and introduce are not new or novel and do not bear on the Court's correct ruling that there is no debt owed to the PBGC.

17.     Rule 60(b)(1) provides that the "court may relieve a party or its legal representative from a final judgment . . . for . . . mistake, inadvertence, surprise, or excusable neglect."  "Whether neglect is 'excusable' has been determined to be an equitable inquiry, taking into account all relevant circumstances."  *In re Coker*, No. 14-00223-5-RDD, 2014 WL 6660370, at *3 (Bankr. E.D.N.C. Nov. 21, 2014) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).  The relevant circumstances are "prejudice to the [nonmoving] party, the length of the delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.  Rule 60(b)(6) provides for relief from a judgment for "any other reason that justifies relief."

18.     The Trustee should not be granted relief from the Order.  There has been no mistake, no inadvertence, surprise, or excusable neglect.  In fact, the Motion does not even suggest that there has been any ground justifying relief under Rule 60 – the facts and issues have been known by all parties and each of the parties, fully aware of the risks of an adverse ruling, has had more than an adequate opportunity to prepare and defend its position.  The Motion instead appears to reflect the frustration that is common among all parties subject to an adverse ruling.  In other words, there is nothing novel about the allegations in the Motion and certainly nothing justifying relief from the Order.  It appears that the Motion can best be summarized as a request by the PBGC, through the Trustee, to get another bite at the apple, as a result of the adverse ruling in the Order.  This is certainly not equitable and is not a reason sufficient to justify relief from the Order.

19.     Again, taking the Motion for face value, the Trustee alleges that relief is warranted because (a) it is now aware of law that it previously didn't know of and (b) the PBGC

has now decided to help clarify facts that the Court allegedly got wrong. Addressing each of the Trustee's cited reasons for relief from the Order, it could not be more clear that relief is not justified.

**The Case Law the Trustee Seeks to Rely on does not Justify Relief from the Order**

20.    The case law the Trustee now seeks to have considered does not provide a ground for the relief requested in the Motion. These cases are not new or novel. In fact, the opinions range from 1999-2021 – all well before the Trustee filed its Response, First Brief, Second Brief, and Third Brief.[1] Likewise, all of the opinions were available prior to each of the hearings in this Adversary Proceeding. The parties each had ample opportunity (approximately 5 months),[2] to conduct legal research and discover, brief, and argue these cases. In fact, the Court urged the parties to submit supplemental briefings throughout the course of this Adversary Proceeding. Nevertheless, the Trustee claims that it only now just discovered these opinions. It was completely within the Trustee's control to discover and argue these cases – the fact that it chose not to do so is not a reason for relief from the Order.

21.    Moreover, none of the supposedly newly found opinions have the ability to "influence the Court's decision." In fact, the Order specifically cites to one of the cases – *Bedi* – that the Trustee believes the Court needs to review prior to making its decision. Doc. 26 (Noting that the Second Circuit's ruling in *Bedi* is in line with the Fifth Circuit's decision in *Sobranes* – that the Government could not rely on the FDCPA to collect money originally owed to private parties). Like the parties, the Court had the opportunity to thoroughly research the issues at hand. It did so and it found and reviewed these cases prior to reaching its decision and entering the Order. The Court correctly concluded, based on the applicable law, that there is no "debt" owed to the PBGC within the context of the FDCPA and, consequently, the Trustee cannot step into the shoes of the PBGC to utilize the FDCPA. Simply put, the Court was correct the first time and none of the cases the Trustee now seeks to argue change or contradict the Court's analysis.

**The Declarations do not Justify the Relief from the Order**

22.    The declarations now offered by the Trustee do not bear on the Court's analysis under Rule 12(b)(6). As the Trustee and PBGC are well aware, to have survived the Motion to Dismiss, the Complaint must have contained sufficient factual matter that when accepted as true,

---

[1] In fact, the undersigned reviewed all but one of these cases prior to submitting its own pleadings.

[2] The Complaint was filed February 3, 2022 and the Order entered July 28, 2022.

"state[d] a claim to relief that is plausible its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, Rule 12(b)(6) requires that the court consider only the allegations on the face of the Complaint – not extrinsic evidence. In fact, as the Trustee repeatedly argued – the issue before the court was purely legal and limited to interpretation of the clear and unambiguous statutes. The declarations were not and are not proper considerations in the context of the Motion to Dismiss or Order.

23. Even assuming the declarations were appropriate considerations – which they are not – the Trustee has had the benefit of the PBGC's assistance throughout this Adversary Proceeding and could have presented these declarations at any time prior to entry of the Order. In fact, the Trustee has suggested that it was because of the PBGC's assistance that it had an advantage over the other parties. There is no reason to now afford the Trustee an additional opportunity to obtain help from the PBGC – the Trustee had three briefs and several hearings in which it could have obtained, and it did obtain, assistance from the PBGC. Nothing prevented the Trustee from obtaining the declarations from the PBGC – although they would not be proper considerations with respect to the Motion to Dismiss.

24. Even assuming the Trustee obtained these declarations in a timely manner and the declarations were proper consideration for a motion to dismiss, the outcome of this Adversary Proceeding would remain unchanged. The declarations do not identify any debt owed to the PBGC. Likewise, they do not identify any circumstance in which the United States, itself, would benefit from recovering monies under the FDCPA – nor could they. *See Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 333 (4th Cir. 2007) ("As trustee, the PBGC must hold all plan assets, including assets recovered through litigation, ***in trust for the plan***"); *In re Art Metal U.S.A., Inc.*, 109 B.R. 74, 83 (Bankr. D.N.J. 1989) ("The funds recoverable in an action commenced by . . . the PBGC would not inure to the benefit of the United States."). In any event, the information the PBGC now seeks to provide is not new or novel and certainly does not change the Court's analysis.

25. For the reasons stated above, the Trustee could have proffered the declarations at any time between the time it filed the Complaint on February 3, 2022 and entry of the Order on July 28, 2022. The Trustee does not have a good reason for the delay – nor any reason at all – and the declarations do not change the Court's well-reasoned analysis and, critically, should not be considered at all. The declarations do not justify relief from the Court's Order.

### It would be Inequitable to Grant Relief from the Order

26.     It would be inequitable to grant the Trustee's Motion for several additional reasons.  First, the parties agreed to "next steps" with respect to the Trustee's potential appeal.  Throughout the hearings on the Motion to Dismiss, the parties and Court remained in agreement as to the need to minimize costs and efficiently conduct an appeal, if appropriate.  The Trustee remained committed to this path until recently.  Presumably, the Trustee, and more likely, the PBGC, now appreciates the consequences of the Motion to Dismiss and Order.  While it is understandable that the Trustee and PBGC would like an additional two bites at the apple (reconsideration plus appeal), the parties agreed to an appeal, if appropriate.  Second, the costs to Mullady is great.  As repeatedly acknowledged throughout this Adversary Proceeding, Mullady is an individual with limited resources who desires to end this matter as efficiently as possible.  For each pleading and hearing in this Adversary Proceeding, Mullady incurs additional and, to the extent they relate to this Motion and the Motion to Intervene, unnecessary costs.  Allowing the Trustee and PBGC to further delay resolution of this matter is inequitable in light of the actions of the Trustee and PBGC as well as the costs to Mullady.

## **<u>CONCLUSION</u>**

27.     The case law and facts now propounded by the Trustee are not new or novel and, in any event, certainly could have been discovered months prior to entry of the Order.  Even had the Trustee acted in a timely fashion, the cases and facts do not change the Court's analysis of the FDCPA or the PBGC's ability to utilize it.  If anything, the case law the Trustee now seeks to have considered supports the conclusion that the PBGC cannot use the FDCPA as there is no "debt" owed to the PBGC within the meaning of the FDCPA.  Similarly, the declarations the Trustee now seeks to rely on are of no help to the Trustee.  Critically, the allegations contained in the declarations do not identify – nor could they identify – any debt owed to the United States.  Furthermore, the declarations are inappropriate in the context of the Motion to Dismiss and Order as Rule 12(b)(6) requires that the Court only consider the allegations on the face of the Complaint.

28.     Based on a review of the Order and the Motion, it is abundantly clear that the Court made the correct decision in entering the Order.  It carefully reviewed the allegations of the Complaint and the applicable law and reached the correct conclusion.

29.     Based on the foregoing and such arguments as Defendant Mark Mullady may submit in any brief filed on his behalf or at the hearing on this matter, Defendant Mark Mullady respectfully request that the Trustee's Motion for Relief from Judgment be denied.

This the 8th day of September, 2022.

/s/ Ashley A. Edwards, Esq.
Ashley A. Edwards, Esq. (N.C. Bar No. 40695)
Phillip M. Fajgenbaum, Esq. (N.C. Bar No. 52128)
Parker Poe Adams & Bernstein LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
ashleyedwards@parkerpoe.com
phillipfajgenbaum@parkerpoe.com
pattyadcroft@parkerpoe.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **OBJECTION TO MOTION FOR RELIEF FROM JUDGMENT** was served on this day via the Court's CM/ECF electronic e-mail service on the following:

Melanie D. Johnson Raubach
Hamilton Stephens Steele Martin PLLC
525 N. Tryon Street, Suite 1400
Charlotte, NC 28202
*Attorney for Plaintiffs*

This the 8th day of September, 2022.

/s/ Ashley A. Edwards, Esq.
Ashley A. Edwards, Esq. (N.C. Bar No. 40695)
Phillip M. Fajgenbaum, Esq. (N.C. Bar No. 52128)
Parker Poe Adams & Bernstein LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: (704) 372-9000
Facsimile: (704) 334-4706
ashleyedwards@parkerpoe.com
phillipfajgenbaum@parkerpoe.com
pattyadcroft@parkerpoe.com
*Attorneys for Defendants*

PPAB 7986308v1