IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| **JTR1, LLC f/d/b/a JTR, LLC** | ) | |
| | ) | Case No. 20-30141 |
| Debtor. | ) | |
| | ) | |
| **A. Burton Shuford, Trustee of the** | ) | |
| **Bankruptcy Estate of JTR1, LLC** | ) | |
| **f/d/b/a JTR, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 22-03018 |
| vs. | ) | |
| | ) | |
| **BJS Insurance, LLC** and **JJM, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## BRIEF IN SUPPORT OF RULE 60 MOTION

NOW COMES Plaintiff A. Burton Shuford, Trustee of the Bankruptcy Estate of JTR1, LLC f/d/b/a JTR, LLC (the "Trustee" or "Plaintiff") and respectfully submits this Brief in Support of Plaintiff's Rule 60 Motion [Doc. 26] (the "Motion") in this action.

## BACKGROUND

1.     Plaintiff files this Motion within the times prescribed by Rule 9024 of the Federal Rules of Bankruptcy Procedure and Rules 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure.

2.     The initial hearing on the Joinder to Motions to Dismiss [Doc. 8] (the "Dismissal Motion") filed by Defendants BJS Insurance, LLC and JJM, LLC (collectively, the "Defendants") was held on May 31, 2022.  After post hearing briefing to address additional issues identified during the initial hearing, the Dismissal Motion came back on for a continued hearing on June 14,

4859-7421-1890, v. 1

2022.  The court then announced a ruling partially resolving the Dismissal Motion, and the parties requested a continuance to confer on how to proceed given the commonality of issues among various adversary proceedings.  The Dismissal Motion came on for hearing a third time on June 22, 2022.

3.      On August 12, 2022, the Court entered an Order Granting Defendants' Motions to Dismiss Specified Claims [Doc. 23] (the "Dismissal Order").  The Dismissal Motion was one of three motions to dismiss that were granted in the Dismissal Order.[1]

4.      This Motion was filed within fourteen days following entry of the Dismissal Order, in compliance with Rule 9024 of the Federal Rules of Bankruptcy Procedure and Rules 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure.

## **STANDARD**

5.      Federal Rule of Civil Procedure 60(b), made applicable by Bankruptcy Rule 9024, provides, in part, that "[o]n motion and upon such terms as are just, the court may relieve a party …from a final judgment, order, or proceeding ...."  Fed. R. Civ. P. 60(b).  This court's Dismissal Order is "final" within the meaning of Rule 60(b).  *See GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 176 (4th Cir. 2007); *Domino Sugar Corp. v. Sugar Workers Local Union* 392, 10 F.3d 1064, 1066-67 (4th Cir. 1993).

6.      To prevail in a motion seeking relief under Rule 60(b), the moving party must first show that three threshold conditions have been met.  *National Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993).  The movant must show "that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside."  *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir.

---

[1] The Motion to Dismiss filed by defendant JMC Financial Holdings, LLC [Doc. 5] and the Motion to Dismiss filed by defendant TMC Financial, LLC [Doc. 5] were the other motions that were granted.

1987).  Once these threshold issues are met, a movant must "satisfy one of the six specific sections

of Rule 60(b)."  *See Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299

(4th Cir. 2017) (*citing Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir.

1993)); *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 102 (4th Cir. 1979).

      7.     Federal Rule of Civil Procedure Rule 60(b), allows a party to seek relief from a

judgment, order, or proceeding for the following six reasons:

1) mistake, inadvertence, surprise, or excusable neglect;
2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
4) the judgment is void;
5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)

      8.     Plaintiff seeks relief specifically under Rules 60(b)(1) and 60(b)(6).  As for Rule

60(b)(1), the court "may relieve a party … from a final judgment, order, or proceeding" for

"mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1); *See also United

States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982) (Rule 60(b)(1) allows a district court to vacate

a judgment for mistake, which can include mistakes by the Court).  Rule 60(b)(6) vests the district

courts with authority to grant relief from a final judgment or order for "any other reason justifying

relief" not enumerated in Rules 60(b)(1) though (5).  Fed. R. Civ. P. 60(b)(6); *Werner v. Carbo*,

731 F.2d 204, 206-07 (4th Cir. 1984).

      9.     Rule 60(b)(6) is the catchall provision which allows the court to grant relief for

"any other reason that justifies relief."  Fed.R.Civ.P. 60(b)(6).  However, "[a]s the Supreme Court

of the United States has observed, 'extraordinary circumstances' are also required to bring the

motion within the 'other reason' language of Rule 60(b)(6)." *U.S. ex rel. Saidiani v. Nextcare,*

*Inc.*, No. 3:11CV141, 2015 WL 5330507, at *3 (W.D.N.C. Sept. 14, 2015) (*citing Moore v.*

*Bethesda Fire Dep't, Inc.*, 937 F.2d 603 (4th Cir.1991) (table decision) (citation omitted)); *see*

*also United States v. Jordan*, No. 3:05CR17, 2013 WL 5933481, at *2 (E.D. Va. Nov. 5, 2013)

("Relief under  Rule 60(b)(6) is reserved 'only [for] truly 'extraordinary circumstances.'").

## **ARGUMENT**

### a. **Basis for the Dismissal Order**

10.     In this case, the Trustee seeks to recover under Section 544(b)(1) of the Bankruptcy

Code.  Section 544(b)(1) permits a trustee to avoid a transfer "…that is voidable under applicable

law by a creditor holding an unsecured claim that is allowable under section 502 of this title".  11

U.S.C. § 544(b)(1).  The unsecured creditor on whom the Trustee relies is the Pension Benefit

Guaranty Corporation, a federal corporation (the "PBGC").  The "applicable law" on which the

Trustee relies in the Federal Debt Collection Procedures Act (the "FDCPA").

11.     The FDCPA applies only to a "debt" owed to the "United States".  28 U.S.C. §

3306(a).  Both are defined terms.  *See* 28 U.S.C. §§ 3302(15) and 3302(3).

12.     The PBGC is a federal corporation.  As such, it is uncontested in this proceeding

that the PBGC is the "United States" as the term is defined in the FDCPA.  *See* 28 U.S.C. §

3302(15)(A).

13.     As more fully articulated in the Dismissal Order,[2] the Court ruled that the PBGC's

claim in this case did not fall within the meaning of "debt" as used in the FDCPA, specifically

---

[2] The Dismissal Order references the previously entered Order Granting Defendants' Motions to Dismiss in *Shuford v. Kearns, et al.*, Adv. No. 22-3008, 2022 WL 3009620 (Bankr. W.D.N.C. July 28, 2022) (the "Kearns Order").

4859-7421-1890, v. 1

ruling that the PBGC claims in this case were not obligations "owing to the United States".  See, i.e., Kearns Order at p. 11.

14.    In reaching its decision, the Court cited several cases, which based their determination of whether a debt was "owing to the United States" based on the direct financial impact the potential recovery would have on the government, largely asking whether the funds would be retained by the United States or delivered to a third party.  (*See United States v. Bedi*, 15 F.4th 222 (2d Cir. 2021); *United States v. Bongiorno*, 106 F.3d 1027 (1st Cir. 1996); *Nathanson v. NLRB*, 344 U.S. 25 (1952).

### b.  The PBGC Does Not Receive All of Its Fund Through Plan Premiums

15.    In the Dismissal Order, the Court finds that the PBGC is funded through premiums paid by plan sponsors and is not funded by the U.S. Treasury. Kearns Order p. 10.  Based on this, the Court determines that the debt at issue in this case is not an instance of the United States guaranteeing benefits to Freedom Plan beneficiaries, rather the PBGC guaranteeing benefits using funds provided by third parties.  *Id.*

16.    It is true that the PBGC receives funding through premiums paid by plan sponsors. *See* Johnson Declaration ¶ 6.

17.    That is not the only source of funding for the PBGC.  *See* Johnson Declaration ¶¶ 4, 6.  The PBGC funds also contain assets of terminated PBGC-trusteed pension plans, returns on those assets, recoveries on statutory liabilities, and recoveries on causes of action.  *Id.*

18.    In consideration of the other categories of assets held by the PBGC, it would be inaccurate to label the funds simply as premium payments.

**c.** **The PBGC, not the Freedom Plan, holds a "direct financial stake" in the collection of this claim**

19.     Of perhaps greater note, the Court also found that while the PBGC collecting its debt "may promote the interests of the beneficiaries…the debt itself will not inure to the U.S. Treasury". Kearns Order p. 10.

20.     This holding relies on a mistaken understanding of the PBGC's operations, which were not discussed in connection with the Motion. The Complaint included no allegations on this issue. No Defendant raised the PBGC's "financial stake" as an argument in support of their Motion to Dismiss.

21.     As set forth in the PBGC Declarations, the Court's impression that the PBGC claim would benefit the Freedom Plan participants and not the PBGC directly, is incorrect.

22.     "The benefit calculations for Freedom Plan participants are based strictly upon the terms of the Freedom Plan, subject to statutory provisions set forth under ERISA". Kuhns Declaration ¶ 6. "Any further recoveries made by the PBGC…would have no effect on the participants' benefit calculation". *Id.*

23.     Payments to the Freedom Plan participants come from the PBGC's "Revolving Funds" (as defined therein). Johnson Declaration ¶ 6.

24.     These Revolving Funds are the source of payment not only for participants' benefits, but also for the PBGC's direct operational and administrative expenses. *Id.*

25.     If the PBGC recovers funds in connection with the Freedom Plan, the "recoveries would be placed in the Trust Fund and comingled" with other assets held by the PBGC. Johnson Declaration ¶ 8.

26.     Based on the foregoing, recovery on the PBGC claims would not increase benefits to Freedom Plan participants, who are already receiving the full amount of their statutory benefits

4859-7421-1890, v. 1

from the PBGC, but would go into the PBGC's coffers. It is only the PBGC who holds a direct

financial interest in the collection of these debts, which help fund its operations.

### d.   **The Correction to the PBGC Operations Impacts the Court's Analysis**

27.     In the primary cases cited by the Court, the pivotal question to the determination of

whether a debt was "owing to the United States" was whether the United States would keep the

money recovered in the collection action. *See Bedi*, 15 F.4th 222, 228 (2d Cir. 2021) (United

States Department of Labor attempting to collect back wages on behalf of employee); *Bongiorno*,

106 F.3d 1027, 1039 (1st Cir. 1997) (United States attempting to collect a child support restitution

award on behalf of the defendant's daughter); *Nathanson*, 344 U.S. 25, 27-28 (1952) (National

Labor Relations Board attempting to collect backpay for a private person under the then-effective

Bankruptcy Act).

28.     As the Court articulated, the government may not use the FDCPA to collect

amounts owing to anyone, rather, the United States must hold "…a direct financial stake in the

debt itself". Kearns Order at p.7, citing *Bedi,* 15 F.4th 222, 227 (2d Cir. 2021).

29.     This same line of reasoning was applied in the *Rostoff* case from the First Circuit

Court of Appeals. *United States v. Rostoff*, 164 F.3d 63 (1999). In *Rostoff*, the court considered

whether the FDIC could collect a restitution award under the FDCPA. *Id.* at 69-70. The court

ruled in favor of the FDIC, determining that, unlike *Bongiorno*, where the proceeds would inure

directly to a private party, the restitution award in *Rostoff* would go directly into the coffers of the

FDIC. *Id.* at 69. As such, the FDCPA "[was] a proper collection vehicle". *Id.* at 70. The FDIC

was allowed to proceed. *Id. See also United States v. Resnick*, 594 F.3d 562 (affirming an FDCPA

action brought by the FDIC).

4859-7421-1890, v. 1

30.    The *Rostoff* and *Resnick* holdings are particularly notable in the case *sub judice*

because the PBGC was modeled after the FDIC.  *PBGC v. LTV*, 496 U.S. 633, 636-37 (1990)

(citing 120 Cong.Rec. 29950 (1974) (statement of Sen. Bentsen)).  To the extent that the structure

of a government entity is relevant in determining whether the entity may rely on the FDCPA, these

cases are useful points of reference.

31.    As set forth in the PBGC Declarations, the benefit payments to the Freedom Plan

participants will remain the same, regardless of the PBGC's success in collecting on these debts,

as participants are already receiving their statutory benefits.  It is the PBGC's coffers, which would

benefit or suffer based on the results of the FDCPA claims.  As such, the logic of the *Bedi*,

*Bongiorno*, *Nathanson*, and *Rostoff* cases would require a determination that the PBGC claims *are*

a debt owing to the United States under the meaning of the FDCPA.

###    e.    Additional Case Law for Consideration – *FTC v. National Business Consultants*

32.    Plaintiff submits the *National Business Consultants* case to the Court as an

additional point of reference.  *FTC v. National Business Consultants*, 376 F.3d 317 (5th Cir. 2004).

33.    In that case, the Federal Trade Commission was successful in obtaining a monetary

judgment on behalf of defrauded franchisees. *Id.* at. 318.

34.    The FTC then attempted to utilize the enforcement provisions of the FDCPA in

collecting the judgment. *See Id.* at 319.

35.    The defendants opposed the FTC's actions on the argument that the debt was "not

'owing to the United States' because it represent[ed] relief and damages awarded for consumer

redress that the FTC must pass on to the defrauded franchisees".  *Id.*

8

36.     The Fifth Circuit Court of Appeals rejected the defendants' argument. *Id.* at 320.

The court reasoned that it must look first and foremost to the text of statute and that the text of the

FDCPA is clear and unambiguous on this point. *Id.*

37.     As the court stated:

> The FDCPA applies to "an amount that is owing to the United
> States." 28 U.S.C. § 3002(3)(B). The terms of the judgment render
> Appellants jointly and severally liable to the FTC, not to private
> individuals, for the entire amount of the judgment. The FTC is
> considered the United States for purposes of the FDCPA. See id. §
> 3002(15)(B). Therefore, the United States, not any individual or
> group of individuals, is the formal owner of the judgment.
>
> Although a portion of the judgment representing the damages
> awarded for consumer redress may ultimately be paid by the
> government to the defrauded franchisees, **nothing in the statutory
> text requires that the government be the exclusive beneficiary of
> the judgment for the statute to apply**.

> *Id.* (footnotes omitted) (emphasis added).

38.     For the avoidance of doubt, the Fifth Circuit Court of Appeals reconfirmed its

decision in the *National Business Consultants* case in its later *Sobranes* opinion. *See Sobranes*

*Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 225-226 (2007).

39.     As the court explained, the ruling in *Sobranes* was required because the creditor in

*Sobranes* was attempting to enforce a debt pursuant to purely contractual terms, which originated

between private parties. *Id.* at 226.  To the contrary, in *National Business Consultants*, even if

private contracts provided the impetus for the lawsuit, the debt recovered was not "owing under

the terms of a contract" between private parties; "rather, the amount owing to the United States

existed because of the [Federal Trade Commission Act]".  *Id.*  "[E]ven though the government

might pay out some of the judgment to private individuals, nothing in the FDCPA required that

the government be the 'exclusive beneficiary of the judgment'." *Id.*

4859-7421-1890, v. 1

40.     Just so here.  Even if PBGC was collecting funds to be paid out in part to Plan beneficiaries, the amount owing to the agency exists under ERISA.

41.     To be clear, these holdings represent a different line of analysis than that offered in the *Bedi*, *Bongiorno*, and *Nathanson* cases.

42.     Although Plaintiff believes that the PBGC (and the Trustee standing in its shoes) should be permitted to act through the FDPCA under any of these cases, Plaintiff commends the reasoning from the *National Business Consultants* case to the Court.  As the Fifth Circuit held, the statutory text is clear on this point.  *FTC v. National Business Consultants*, 376 F.3d 317, 320 (5th Cir. 2004).  If the creditor on a debt is the "United States" under the meaning of the FDCPA, then the United States should be permitted to proceed.  *Id*.  The PBGC is the "United States" per the statutory terms.  *See* 28 U.S.C. § 3302(15)(A).  The statute contains no requirement that the debt inure to the U.S. Treasury. *See* 28 U.S.C. § 3302(3).  Further inquiry into the internal processes or funding mechanisms of the government entity is not required by statute.  *See gen*. 28 U.S.C. § 3001 et al.

## CONCLUSION

Under either line of analysis, the Court should set aside the Dismissal Order. This Motion was timely filed pursuant to the Bankruptcy Rules and the Federal Rules of Civil Procedure.  As outlined above, Plaintiff has a meritorious argument on the issue.  The opposing party would not be unfairly prejudiced by the Court correcting the Dismissal Order, which appears to have been entered based on a mistake of the facts underlying the decision.  Based on the foregoing and such arguments as the Plaintiff may submit at the hearing on this matter, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

[Signatures on following page].

4859-7421-1890, v. 1

Dated: September 12, 2022
       Charlotte, North Carolina

                                      HAMILTON STEPHENS
                                      STEELE + MARTIN, PLLC

                                       */s/ Melanie D. Johnson Raubach*
                                      Melanie D. Johnson Raubach (NC Bar No. 41929)
                                      525 North Tryon Street, Suite 1400
                                      Charlotte, North Carolina 28202
                                      Telephone: (704) 344-1117
                                      Facsimile:  (704) 344-1483
                                      mraubach@lawhssm.com
                                      *Attorney for Plaintiff*

4859-7421-1890, v. 1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, copies of the foregoing were served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case.

Dated: September 12, 2022
      Charlotte, North Carolina

                                     */s/ Melanie D. Johnson Raubach*
                                     Melanie D. Johnson Raubach

HAMILTON STEPHENS
STEELE + MARTIN, PLLC
525 North Tryon Street, Suite 1400
Charlotte, NC  28202

4859-7421-1890, v. 1